UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AMERICAN BIOPHYSICS CORP., Plaintiff | : | |
| v. | : | C.A. No. 05-321T |
| DUBOIS MARINE SPECIALTIES, Defendant. | : | |

**PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS**

Now comes Plaintiff, American Biophysics Corp. ("Plaintiff"), and objects to the Motion to Dismiss of Defendant, Dubois Marine Specialties. As grounds for its Objection, Plaintiff relies on the Memorandum of Law filed simultaneously herewith.

AMERICAN BIOPHYSICS CORP.,

By Its Attorneys,

Justin T. Shay (#2781)
Charles S. Beal (#5559)
Joseph A. Anesta (#3020)
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, Rhode Island 02903
Tel. (401) 331-5700
Fax (401) 331-5787

Date: October 11, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of October, 2005, a true copy of the within was sent, via first-class mail, postage prepaid, to the following:

David J. Strachman, Esq.
McIntyre, Tate, Lynch & Holt
321 South Main Street
Suite 400
Providence, Rhode Island 02903

G:\cmc\AmericanBio\Dubois\pldgs\objmodismiss.doc

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AMERICAN BIOPHYSICS CORP., Plaintiff | : | |
| v. | : | C.A. No. 05-321T |
| DUBOIS MARINE SPECIALTIES, Defendant. | : | |

# PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANT'S MOTION TO DISMISS

AMERICAN BIOPHYSICS CORP.

By Its Attorneys,

Justin T. Shay (#2781)
Charles S. Beal (#5559)
Joseph A. Anesta (#3020)
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, Rhode Island 02903
Tel. (401) 331-5700
Fax (401) 331-5787

Date: October 11, 2005

**TABLE OF CONTENTS**


**I. INTRODUCTION** .......... 1

**II. PLEADINGS** .......... 1

**III. DESCRIPTION OF THE MOTION** .......... 2

**IV. FACTS** .......... 2

**V. ISSUES** .......... 4

**VI. POINTS AND AUTHORITIES** .......... 4

A. The CISG Only Applies to Contracts for the Sale of Goods and Not to Distributorship Agreements Such as That at Issue Here. .......... 4

B. By Executing The Clear and Unambiguous Forum Selection Clause, Defendant Waived the Application of The CISG .......... 7

C. Defendant Waived Any Objection to The Exercise of Personal Jurisdiction Over It by This Court .......... 8

D. In Light of the Unambiguous Forum Selection Clause and Defendant's Continued Relationship With the Rhode Island Manufacturer, the Traditional Circumstances Requiring a Dismissal for *Forum Non Conveniens* Simply Are Not Present .......... 10

*1. Defendant Has Not Met its Burden of Demonstrating That Manitoba Is an Adequate Forum* .......... 10

**a. Access to Sources of Proof** .......... 10

**b. Availability of Process For and Cost of Obtaining Witnesses Does Not Favor Defendant** .......... 11

**c. A United States District Court Judgment Can be Enforced in Canada** .......... 11

**d. The Public Interest Factors Do Not Favor Dismissal** .......... 11

*2. Fairness Dictates That the Action Be Allowed to Proceed in Rhode Island* .......... 11

**VII. CONCLUSION** .......... 12

**CERTIFICATE OF SERVICE** .......... 13

**TABLE OF AUTHORITIES**

**Cases**

*AMCO UKRSERVICE v. American Meter Company*, 312 F. Supp. 2d 681 (E.D. Pa. 2004) .....4, 7

*Bense v. Interstate Battery Sys. of America, Inc.*, 683 F.2d 718 (2nd Cir. 1982) ............................8

*Claudia v. Olivieri Footwear Ltd.*, 1998 WL 164824 (S.D. N.Y. 1998) ..................................4, 7

*Design Strategy v. Nghiem*, 14 F. Supp. 2d 298 (S.D. N.Y. 1998) ..............................................8

*Fercus S.R.L. v. Palazzo*, 2000 WL 1118925, at *3 (S.D.N.Y., Aug. 8, 2000) .........................4, 7

*Helen Kaminski Pty. Ltd. v. Marketing Australian Products, Inc.*, 1997 WL 414137 (S.D. N.Y. July 23, 1997) ..................................................................................5, 6

*INSO Corp. v. Handelsges*, 999 F. Supp. 165 (D. Mass. 1998) ....................................................8

*Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S. Ct. 2099, 72 L.Ed.2d 492 (1982)...........................................................................8

*Intermountain Sys., Inc. v. Edsall Constr. Co.*, 575 F. Supp. 1195 (D. Colo. 1983).......................9

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ......................................................9, 12

*Mercier v. Sheraton International*, 981 F.2d 1345 (1st Cir. 1992) ........................................10, 11

*Microfibres, Inc. v. McDevitt-Askew*, 20 F. Supp.2d 316 (D.R.I. 1998) ......................................8

*National Equip. Rental v. Szukhent*, 375 U.S. 311, 84 S. Ct. 411, 11 L.Ed.2d 354 (1964)............8

*Packer v. TDI Systems*, 959 F. Supp. 192 (S.D. N.Y. 1997) .........................................................8

*Piper Aircraft Co. v. Regno*, 454 U.S. 235, 102 S. Ct. at 258 (U.S. 1981) .................................10

*Richardson Greenshields Securities, Inc. v. Metz*, 566 F. Supp. 131 (S.D. N.Y. 1983) ................9

*Silva v. Encyclopedia Britannica Inc.*, 239 F.3d 385 (1st Cir. 2001)............................................8

*Viva Vino Import Corporation v. Farnese Vini S.R.L.*, 2000 WL 1224903 at *2 (E.D. Pa., Aug. 29, 2000) ..........................................................................................4, 7

## I. INTRODUCTION

Plaintiff, American Biophysics Corp. ("ABC" or "Plaintiff"), respectfully submits this Memorandum of Law in support of its Objection to the Motion of Defendant, Dubois Marine Specialties ("Dubois" or "Defendant"), to Dismiss the Complaint. Plaintiff objects to Defendant's Motion to Dismiss on the grounds, as described in greater detail below, that Defendant waived its objection based on lack of personal jurisdiction by agreeing in writing that any disputes relating thereto would be heard in the State or Federal Courts of Rhode Island and governed by Rhode Island law. Similarly, in light of the forum selection clause voluntarily entered into between the parties and the numerous witnesses and extensive evidence located within Rhode Island, the traditional factors justifying a dismissal for *forum non conveniens* simply are not present. Finally, under the well-established body of Federal case law, the United Nations Convention on Contracts for the International Sale of Goods ("CISG") does not apply to Distributorship Agreements, such as that at issue here, that contain clear and unambiguous forum selection and choice of law provisions.

## II. PLEADINGS

On July 22, 2005, Plaintiff initiated this action by the filing of a Complaint with this Court. The Complaint alleged that Defendant, a Canadian corporation, had breached its Distributorship Agreement with Plaintiff by, among other things, failing to pay amounts due for product supplied to it in the amount of $610,498.69, as of the date of filing. (Complaint, ¶¶ 11, 14). The Complaint contained causes of action for breach of contract, book account and goods sold and delivered. (Complaint, ¶¶ 8-15).

The Defendant did not answer the Complaint, but instead filed the instant Motion to Dismiss on the claimed basis of *forum non conveniens* and lack of personal jurisdiction. (Defendant's Memo. at 1).

## III. DESCRIPTION OF THE MOTION

Defendant has moved to dismiss the Complaint on the grounds of *forum non conveniens* and lack of personal jurisdiction over the Defendant, claiming that the forum selection clause and choice of law provisions contained within the Distributorship Agreement are rendered void by the terms of the CISG.

## IV. FACTS

Plaintiff, which is located in North Kingstown, Rhode Island, is the manufacturer of the acclaimed "Mosquito Magnet®" product, which uses a patented process to emit carbon dioxide in such a manner as to mimic breath from mammals. The emission of the carbon dioxide has the effect of attracting mosquitoes and other biting insects, which are subsequently vacuumed into a net, where they dehydrate. (Defendant's Memo. at Exhibit A). This product has been lauded by the scientific literature and consumer reviews, and has been an enormous commercial success. (*Id.*)

The Complaint alleges that, in 2002, Plaintiff and Defendant entered into a "Non-Exclusive Distributorship Agreement," a copy of which is attached to the Complaint as Exhibit 1 (the "Distributorship Agreement"). The Complaint further alleges that the Distributorship Agreement provided, among other things, that Dubois would have the right to buy insect mitigation systems at prices set by ABC "from time to time" and that Dubois would pay interest in the amount of eighteen percent (18%) on overdue amounts. (Complaint, ¶ 7).

The Distributorship Agreement, which was duly executed by the principals of Plaintiff and Defendant, contained the following explicit forum selection and choice of law provision:

> This Agreement shall be construed and enforced in accordance with the laws of the State of Rhode Island. The parties agree that the courts of the State of Rhode Island, and the Federal Courts located therein, shall have exclusive jurisdiction over all matters arising from this Agreement.

(Complaint, Exhibit 1). Less than one inch below this explicit statement was the signature of John Dubois, on behalf of Defendant. (*Id.*)

Although the Distributorship Agreement gives the Distributor the right to purchase Plaintiff's products "at such prices and on such terms as manufacturer shall establish from time to time," it does not specify any specific quantity or terms for such purchases. (¶ 2 (a)). The Distributorship Agreement further requires the Distributor to maintain an "adequate inventory" of its products, to vigorously promote its products, and to use its best efforts to maintain a "fully trained sales organization." (¶ 4). Among other things, the Agreement also prescribed advertising policies to be used in conjunction with Plaintiff's products, imposed financial policies and contained terms specifically governing the use of Plaintiff's trademarks. (¶ 9). Again, while describing in detail the distributor/manufacturer relationship, the Distributorship Agreement does not provide for the actual sale of any specific goods to Defendant.

Despite this unequivocal expression that "all matters" arising from the Agreement should be decided pursuant to Rhode Island law and in the State or Federal Courts of Rhode Island, steering clear of the more than $600,000.00 alleged to be owed by it to Plaintiff, Defendant asserts that the Complaint duly filed in this Court should be dismissed pursuant to the doctrine of *forum non conveniens* or, in the alternative, for lack of personal jurisdiction.

## V. ISSUES

1. Does the United Nations Convention on Contracts for the International Sale of Goods ("CISG") apply to a Distributorship Agreement that does not, by its specific terms, provide for a particular sale of goods, but instead generally governs the manufacturer/distributor relationship?

2. Do the general provisions of the CISG somehow trump a specific written forum selection clause and choice of law provision contained within a written Distributorship Contract between the parties?

3. Did Defendant's execution of a specific and unambiguous forum selection clause waive its defense of lack of personal jurisdiction?

4. Do the facts and circumstances of this case, including the execution of a clear and unequivocal forum selection clause, justify a dismissal of this action on *forum non conveniens* grounds?

## VI. POINTS AND AUTHORITIES

### A. The CISG Only Applies to Contracts for the Sale of Goods and Not to Distributorship Agreements Such as That at Issue Here.

The courts are uniform in holding that the CISG only applies to contracts for the sale of goods where the parties have places of business in different nations, the nations are CISG signatories, and the contract does not contain a choice of law provision. *See, e.g., AMCO UKRSERVICE v. American Meter Company*, 312 F. Supp. 2d 681, 686 (E.D. Pa. 2004); *Fercus S.R.L. v. Palazzo*, 2000 WL 1118925, at *3 (S.D.N.Y., Aug. 8, 2000); *Viva Vino Import Corporation v. Farnese Vini S.R.L.*, 2000 WL 1224903 at *2 (E.D. Pa., Aug. 29, 2000); *Claudia v. Olivieri Footwear Ltd.*, 1998 WL 164824 (S.D. N.Y. 1998). As is glaringly apparent, the contract here at issue *does* contain a clear and unequivocal choice of law provision, and thus the

CISG has no application.[1] However, it is just as clear under the well-developed case law that the Distributorship Agreement entered into between the parties does not constitute a "contract for the sale of goods," that would trigger the CISG's application.

In a recent case that did *not* involve a forum selection clause, the United States District Court for the Eastern District of Pennsylvania surveyed the law regarding whether the CISG can be applied to distributorship agreements which do not specifically provide quantity terms relating to the sales of goods:

> Apart from a handful of exclusions that have no relevance here, the CISG does not define what constitutes a contract for the sale of goods. *See* CISG art. 2, *reprinted* in 15 U.S.C.A. App., at 335 (West 1998). This lacuna has given rise to the problem of the Convention's applicability to distributorship agreements, which typically create a framework for future sales of goods but do not lay down precise price and quantity terms.
>
> In the few cases examining this issue, courts both here and in Germany have concluded that ***the CISG does not apply to such contracts***. In *Helen Kaminski Pty. Ltd. v. Marketing Australian Products, Inc.*, 1997 WL 414137 (S.D. N.Y. July 23, 1997), the court held that the CISG did not govern the parties' distributorship agreement, but it suggested in dictum that the CISG would apply to a term in the contract that addressed specific goods. *Id.* at *3. Three years later, Judge DuBois of this Court followed Helen Kaminski and held that the CISG did not govern an exclusive distributorship agreement, an agreement granting the plaintiff a 25% interest in the defendant, or a sales commission agreement. *Viva Vino Import Corp. v. Farnes Vini S.r.l.*, No. 99-6384, 2000 WL 1224903, at *1-2 (E.D. Pa. Aug 29, 2000) (DuBois, J.). Two German appellate cases have similarly concluded that the CISG does not apply to distributorship agreements, which they termed "framework agreements," but does govern sales contracts that the parties enter pursuant to those agreements. *See* OLG Dusseldorf, UNILEX, No. 6 U 152/95 (July 11, 1996), *abstract available at* http://cisgw3.law.pace.edu/cases/960711g1.html; OLG Koblenz, UNILEX, No. 2 U 1230/91 (Sept. 17, 1993), *text available at* http://cisgw3.law.pace.edu/cases/930917g1.html.

*AMCO UKRSERVICE v. American Meter Company*, 312 F. Supp. 2d 681, 687 (E.D. Pa. 2004) (*emphasis added*). The Court went on to reject the argument that because a broader agreement merely contained terms relating to the future sales of goods, it was governed by the CISG, citing

[1] *See* Section VI (B), *infra*.

the "destabilizing" effect of such a result and decrying the "expectation-defeating" consequences of applying the CISG to an agreement of this type.

This Court should follow the sound reasoning set out in *AMCO UKRSERVICE* and the cases cited therein. Here, the Distributorship Agreement involved in this case does not contain definite terms regarding the quantity of goods to be purchased. *See Helen Kaminski Pty Ltd. v. Marketing Australia Prods.*, 1997 WL 414137, at *2-3 (S.D. N.Y. July 23, 1997) (refusing to apply the CISG to a distributorship agreement because it did not contain definite terms regarding the price or types of goods to be sold). Here, among its many terms, the Distributor Agreement only granted the Defendant the right to purchase its "products" "at such prices and on such terms as manufacturer shall establish from time to time." (Complaint, ¶ 2 (a)). The majority of the Distributorship Agreement is devoted to such issues as marketing obligations, forecasts, advertising policies, use of trademarks and other issues typically addressed in a distributorship agreement. *See* Exhibit 1 to the Complaint. It is clear that to characterize it now as a contract for the sale of goods would result in the same sort of "expectation-defeating" result that the Court decried in the *AMCO UKRSERVICE* case.

Further, that this action pertains to a distributorship agreement rather than a "contract for the sale of goods" is also apparent from the Affidavit submitted by Defendant's principal, John Dubois. Mr. Dubois foreshadows Defendant's counterclaims by stating in Paragraph 11 of his Affidavit:

> American Biophysics Corp. violated the agreement by (1) selling products directly to our competitors Canadian tire, (2) selling defective products, (3) failing to abide by the agreement, and (4) misrepresentation.

Accordingly, by Defendant's own admission, the crux of this dispute, including its anticipated counterclaims, relates not to a contract for the sale of goods, but to the enforcement of the

specific terms of a distributorship agreement, and the CISG should not apply to defeat the intentions of the parties under these circumstances.

B. By Executing The Clear and Unambiguous Forum Selection Clause, Defendant Waived the Application of The CISG.

As alluded to above, the well-developed body of case law provides that the CISG only applies where -- unlike here -- the agreement does *not* contain a forum selection clause. *See, e.g., AMCO UKRSERVICE*, 312 F. Supp. 2d at 686 (CISG only applies to contracts for sale of goods where the contract does not contain a choice of law provision); *Fercus S.R.L. v. Palazzo*, 2000 WL 1118925 at *3 (S.D. N.Y., August 8, 2000) (same); *Viva Vino Import Corporation v. Farnese Vini S.R.L.*, 2000 WL 1224903 at *2 (E.D. Pa., August 29, 2000) (same); *Claudia v. Olivieri Footwear Ltd.*, 1998 WL 164824 (S.D. N.Y. 1998) (same).

Faced with this formidable obstacle, Defendant attempts to import a provision of Manitoba law to suggest that the choice of law provision should have expressly contained a rejection of the CISG. It is apparently undisputed, however, that Manitoba law has no application to this case. In the face of the explicit choice of law provision, even Defendant does not contend that Manitoba law applies to this dispute, but rather contends that the international convention of the CISG applies. Neither the explicit statutory wording of the CISG nor the case law interpreting it requires that the parties to a distributorship agreement insert language specifically "opting out" of the CISG. Accordingly, Defendant's attempts to incorporate a Manitoba practice guide's perspective on Manitoba law into the CISG and to use such unsupported importation as a means of defeating the parties' intention to apply Rhode Island law are unavailing.[2]

[2] Further, even if Defendant was correct that the CISG should be applied (which we respectfully submit that it is not), the application of the CISG would in no way defeat the application of the *forum selection clause*, as this Court is more than qualified to apply the scheme set out in the CISG.

C. Defendant Waived Any Objection to The Exercise of Personal Jurisdiction Over It by This Court.

Because personal jurisdiction protects an individual's liberty interest, it can be waived like any other right of that type. *See Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-03, 102 S. Ct. 2099, 72 L.Ed.2d 492 (1982). It is well-established in this Circuit that a defendant may waive its right to challenge personal jurisdiction by consenting to a forum selection clause such as the one at issue here. *Microfibres, Inc. v. McDevitt-Askew*, 20 F. Supp.2d 316, 322 (D.R.I. 1998); *see also National Equip. Rental v. Szukhent*, 375 U.S. 311, 315-16, 84 S. Ct. 411, 11 L.Ed.2d 354 (1964) (stating that "parties to a contract may agree in advance to submit to the jurisdiction of the given court"); *INSO Corp. v. Handelsges*, 999 F. Supp. 165, 166 (D. Mass. 1998); *Packer v. TDI Systems*, 959 F. Supp. 192, 196 (S.D. N.Y. 1997) (holding that a party may agree, by contract, to the jurisdiction of any given forum). It is black-letter First Circuit law that forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Silva v. Encyclopedia Britannica Inc.*, 239 F.3d 385 (1st Cir. 2001) (*quoting M/S Brennan v. Zapata Off-Shore Cor.*, 407 U.S. 1, 10 (1972)); *see also Bense v. Interstate Battery Sys. of America, Inc.*, 683 F.2d 718, 721-22 (2nd Cir. 1982).

The case law from this Circuit clearly holds that where a party has voluntarily entered into a forum selection clause, it has also submitted to personal jurisdiction in that court. *See, e.g., Microfibres, Inc. v. McDevitt-Askew*, 20 F. Supp.2d 316, 322 (D.R.I. 1998) ("[t]he great weight of authority is to the effect that a defendant may waive her right to challenge personal jurisdiction" by signing a forum selection clause); *Design Strategy v. Nghiem*, 14 F. Supp. 2d 298 (S.D. N.Y. 1998) (holding that personal jurisdiction could be obtained through a forum selection clause); *Handelsges*, 999 F. Supp. at 167 (even where there was no explicit consent to

personal jurisdiction, the court held that a contractual stipulation to a forum implies consent to personal jurisdiction); *Richardson Greenshields Securities, Inc. v. Metz*, 566 F. Supp. 131, 133 (S.D. N.Y. 1983) (waiver of objection to venue would be meaningless if it did not also contemplate a concomitant waiver of objection to personal jurisdiction).

Given their consent to litigation in this forum, and thus, the jurisdiction of this Court, Defendant must show that "trial in the contractual forum will be so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court" to overcome its contractual agreement. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972). It has not done so. Although Defendant may be inconvenienced by travel here for trial, the contract at issue will be interpreted under Rhode Island law, and Plaintiff's burden would be similar if the case were litigated in Manitoba.

Finally, Defendant does not assert, and there is also no evidence to suggest, that the forum selection clause was the product of fraud or overreaching. The contracts here are relatively brief and unambiguous. *Cf. Intermountain Sys., Inc. v. Edsall Constr. Co.*, 575 F. Supp. 1195, 1197 (D. Colo. 1983) (enforcing forum selection clause in nine page contract). There is no evidence that Defendant did not voluntarily enter into the Agreement.

In sum, Defendant contractually consented to, and waived their right to challenge, personal jurisdiction by signing the Distributorship Agreement. There being no good reason to ignore the intent of the parties, the terms of that Agreement should govern, and Defendant's 12 (b)(2) Motion denied.

D. In Light of the Unambiguous Forum Selection Clause and Defendant's Continued Relationship With the Rhode Island Manufacturer, the Traditional Circumstances Requiring a Dismissal for *Forum Non Conveniens* Simply Are Not Present.

It is well-established that there is a strong presumption in favor of the plaintiff's choice of forum. *Piper Aircraft Co. v. Regno*, 454 U.S. 235, 102 S. Ct. at 258 (U.S. 1981). It is equally well-established that the defendant must bear the burden of proving both the availability of an adequate alternative forum and the likelihood of serious unfairness as to the parties in the absence of a transfer to the alternative forum. *Mercier v. Sheraton International*, 981 F.2d 1345, 1349 (1st Cir. 1992). Here, Defendant can make neither of these showings.

*1. Defendant Has Not Met its Burden of Demonstrating That Manitoba Is an Adequate Forum*

As described above, the parties have unambiguously agreed in writing that Rhode Island law will apply to this dispute. With all due respect to the Justices of the Manitoba Court, the Federal Courts in Rhode Island are better situated to hear this dispute due to their familiarity with Rhode Island law. Further, Defendant has presented *no* information as to the adequacy of Manitoba's law with regard to distributorship arrangements, its standards relating to discovery, or the relative congestion of the Manitoba Court's docket. Defendant has quite simply failed to meet its burden in this regard.

**a. Access to Sources of Proof**

Defendant's statements that the access to sources of proof favors litigation in Canada is simply incorrect. As Defendant's objections to Plaintiff's claim is expected to be based on alleged defects to Plaintiff's products, Plaintiff will inevitably need to produce numerous Rhode Island witnesses as to the manufacture and quality of its products. Similarly, numerous Rhode Island witnesses will have to testify as to communications with Defendant over the years. Accordingly, this factor does not favor either side.

**b. Availability of Process For and Cost of Obtaining Witnesses Does Not Favor Defendant**

Those witnesses that are located in Canada are indisputably subject to process and can be deposed for trial testimony, if need be. This factor, too, does not militate toward having this dispute heard in Canada.

**c. A United States District Court Judgment Can be Enforced in Canada**

Despite Defendant's protestations that a Rhode Island Judgment may not be enforced in Canada is not only factually inaccurate, but is simply beside the point, as the Judgment obtained in this action would be a Federal Court Judgment, which should, in all respects, be enforceable in Canada. Further, Defendant would face the same issue of enforcing a foreign judgment if it prevailed on its expected counterclaims in Manitoba. Indeed, virtually all of the purported inconveniences cited by Defendant work only to inconvenience the Plaintiff -- the very party that wishes this action to proceed in Rhode Island in accordance with the written agreement of the parties.

**d. The Public Interest Factors Do Not Favor Dismissal**

The public interest requires that the clearly stated intentions of the parties (here, the forum of this litigation) should be honored and enforced. This promotes certainty and predictability in business transactions, rather than the convenience of one of the parties. This factor, too, does not favor Defendant's argument.

*2. Fairness Dictates That the Action Be Allowed to Proceed in Rhode Island*

The Defendant need not only show that the alternative form is adequate, but that "the alternative forum is sufficiently more convenient for the parties as to make transfer necessary to avoid serious unfairness." *Mercier*, 981 F.2d at 1354 (citing *Piper Aircraft*, 454 U.S. at 259, 102

S. Ct. at 267). Forum selection clauses are routinely considered, and given great deference in the context of a *forum non conveniens* analysis. *E.g., Mercier*, 981 F.2d at 1358; *Royal Bed and Spring Co., Inc. v. Famossul Industria e Comercio de Moveis Ltda.*, 906 F.2d 45, 51-52 (1st Cir. 1990). *See also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (U.S. 1972) (finding in maritime case that where valid forum selection clause existed, court need not engage in other factors of *forum non conveniens* analysis).

In this case, two sophisticated business entities entered into a written agreement expressing that disputes under the Distributorship Agreement should be heard and decided in the State or Federal Courts of Rhode Island. Not only has the Defendant failed to meet its burden of demonstrating that it would be "seriously unfair" for the action to proceed in Rhode Island, but it would be grossly unfair not to honor the intentions of the parties that this dispute proceed in this Court.

## VII. CONCLUSION

For all of the foregoing reasons, this Court should enter an order denying Defendant's Motion to Dismiss and granting such further relief as the Court deems just and appropriate.

AMERICAN BIOPHYSICS CORP.,

By Its Attorneys,

Justin T. Shay (#2781)
Charles S. Beal (#5559)
Joseph A. Anesta (#3020)
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, Rhode Island 02903
Tel. (401) 331-5700
Fax (401) 331-5787

Date: October 11, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of October, 2005, a true copy of the within was sent, via first-class mail, postage prepaid, to the following:

David J. Strachman, Esq.
McIntyre, Tate, Lynch & Holt
321 South Main Street
Suite 400
Providence, Rhode Island 02903

G:\cmc\AmericanBio\Dubois\pldgs\memoobjmodismiss.doc